# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>YAMASSEE TRIBAL NATION, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-00759-LJO-EPG<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART AND DENIED IN PART**<br><br>(ECF No. 26)<br><br>**OBJECTIONS, IF ANY, DUE IN FOURTEEN (14) DAYS** |

On March 29, 2018, JPMorgan Chase Bank, N.A. ("Plaintiff" or "Chase") filed a motion for entry of default judgment, seeking declaratory and permanent injunctive relief against Peter P. Khamsanvong, Yamassee Tribal Nation, and Supreme Court of the Yamassee Native American Association of Nations ("Yamassee Supreme Court") (collectively, "Defendants"). (ECF No. 26). Defendants have not opposed the motion. Upon review of the declarations, pleadings, and exhibits[1] to the present motion, the Court recommends granting the motion for default judgment

---

[1] Plaintiff requests that the Court take judicial notice of several exhibits, including a deed of trust, substitution of trustee, notice of default and election to sell under deed of trust, and a grant deed. Courts may take judicial notice of facts "not subject to reasonable dispute" when they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Accordingly, the Court takes judicial notice of these matters of public record, which are not subject to reasonable dispute. *See e.g.*, *Paulhus v. Fay Servicing, LLC*, Case No. 14-736, 2014 WL 3845051, *1, n.2 (E.D. Cal. Aug. 6, 2014) (taking judicial notice of "several recorded documents pertaining to

1

and awarding declaratory relief. However, the Court does not recommend awarding permanent injunctive relief.

**I.     BACKGROUND**

On June 2, 2017, Plaintiff commenced this declaratory judgment action. (ECF No. 1). Plaintiff alleges that on or about August 13, 2013, Defendant Khamsanvong obtained a residential loan in the amount of $108,989.00 (the "Loan"), secured by a deed of trust, encumbering the real property known as 1906 West Aurora Avenue, Porterville, California 93257 (the "Property"). Plaintiff was the servicer of the Loan until October 1, 2015, when Carrington Mortgage Services, LLC ("Carrington") became the loan servicer. Carrington started non-judicial foreclosure proceedings on the property, and, on September 30, 2016, caused a notice of default to be recorded against title to the property.

On December 13, 2016, the Yamassee Supreme Court issued an "Order to Show Cause/Default Judgment/Writ of Restituion [sic] In The Event Defendants Fail To Respond Within 21 Days Of Receipt Of This Order," naming Chase and Jamie Dimon, Chase's Chief Executive Officer, as defendants. The purported order to show cause alleges that Defendant Khamsanvong is "an enrolled tribal member of the Yamassee tribal nation" and that the Property, which was owned by Defendant Khamsanvong, is in "Indian country," and seeks remedies against the named defendants including "an accounting, restitution or payment of proceeds from an alleged 'securitization' of the mortgage note and damages in the amount of $25 million dollars." On January 13, 2017, Plaintiff, through a special appearance, responded to the Order Show Cause objecting to the Yamassee Tribal Nation and the Yamassee Supreme Court's purported jurisdiction over Plaintiff and Mr. Dimon. Plaintiff never received a response to its objection.

Plaintiff seeks a judicial declaration that the Yamassee Tribal Nation or the Yamassee Supreme Court lacks any personal or subject matter jurisdiction over Plaintiff or its executives, employees and agents, including Mr. Dimon, and cannot award damages or any legal or equitable

---

plaintiff's property," including a deed of trust, assignment of deed of trust, notice of default, rescission of default, and substitution of trustee).

2

relief, in any manner or any amount, to Defendant Khamsanvong. Plaintiff also seeks a permanent injunction against Defendants, and each of them, prohibiting them and enjoining them from any further effort to exercise jurisdiction over Plaintiff or its officers, including Jamie Dimon, and from issuing any orders, awards or judgments to or against Plaintiff or its officers, including Jamie Dimon, in connection with the claims made by Defendant Khamsanvong.

On July 6, 2017, Defendant Khamsanvong was personally served with the summons and complaint. (ECF No 4). On August 30, 2017, Defendants Yamassee Tribal Nation and Yamassee Supreme Court were served with the summons and complaint. (ECF Nos. 10, 11).

On September 8, 2017, Defendant Khamsanvong filed in this action three documents on the letterhead of "The Traditional Court of Equity for the Association of Original Peoples' Bands, Tribes, Clans and Communities in North America, South America, Africa and Australasia". (ECF No. 9). On September 22, 2017, Defendant Khamsanvong filed a "Final Order to Cease & Desist Pursuant to 25 United States Code § 1301" signed by "Judge Silver Cloud Musafir" and on the letterhead of "The Traditional Court of Equity for the Association of Original Peoples' Bands, Tribes, Clans and Communities in North America, South America, Africa and Australasia." (ECF No. 12). On October 2, 2017, and October 11, 2017, Plaintiff moved to strike the documents filed by Defendant Khamsanvong. (ECF Nos. 14, 16). On December 27, 2017, the documents were stricken pursuant to Fed. R. Civ. P. 11(a), Local Rule 131(b), and Local Rule 183(a), as Defendant Khamsanvong failed to sign the submitted documents and could not proceed on behalf of Yamassee Tribal Nation and the Yamassee Supreme Court. (ECF No. 22).

On August 2, 2017, the Clerk of the Court entered default against Defendant Khamsanvong. (ECF No. 6). On December 27, 2017, the Clerk entered default against Yamassee Tribal Nation and the Yamassee Supreme Court. (EFC Nos. 23, 24).

Now before the Court is Plaintiff's motion for a default judgment. By its complaint, Plaintiff seeks a judicial declaration that "the Yamassee Tribal Nation or the Yamassee Supreme Court lacks any personal or subject matter jurisdiction over Plaintiff or its executives, employees and agents, including Mr. Dimon, and cannot award damages or any legal or equitable relief, in any manner or any amount, to Defendant Khamsanvong." (ECF No. 1 at 8). Plaintiff also seeks a

permanent injunction against Defendants, "prohibiting them and enjoining them from any further effort to exercise jurisdiction over Plaintiff or its officers, including Jamie Dimon, and from issuing any orders, awards or judgments to or against Plaintiff or its officers, including Jamie Dimon, in connection with the claims made by Khamsanvong." (*Id.* at 8-9).

On May 11, 2018, a hearing was held on the motion for default judgment. (ECF No. 28). On May 21, 2018, Plaintiff filed a proposed judgment for both declaratory and injunctive relief. Plaintiff proposes the following permanent injunction:

> To that end, this Court hereby issues a permanent injunction requiring Defendants and Defendants' agents, servants, employees, successors-in-interest, and all other persons who are in active concert or participation with Defendants, and each of them, to cease and desist any further efforts to exercise personal or subject matter jurisdiction over Plaintiff, or its officers, executives, employees and agents, including but not limited to Jamie Dimon, for any claim arising out of or related to Khamsanvong, the Property and/or related to Loan. Defendants are further ordered to cease and desist any attempts at litigation outside of this Court regarding any claims arising out of or related to Khamsanvong, the Property and/or related to the Loan.
>
> Defendants are hereby enjoined from any and all efforts to pursue enforcement or collection of any purported orders, awards or judgments that have been issued by the Yamassee Nation or the Yamassee Court, and each of them, involving Plaintiff, and/or its officers, executives, employees and agents, including plaintiff's chief executive officer Jamie Dimon, related to Khamsanvong, the Property, and/or related to the Loan, which orders, awards or judgments have been declared null and void and unenforceable as a matter of law.

(ECF No. 31).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that default shall be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Upon entry of default, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Sys, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of facts, is concluded on those facts by the

4

judgment, and is barred from contesting on appeal the facts thus established."). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default under Rule 55(a). "A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir.1986)). Instead, the decision to grant or deny an application for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, courts consider the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. However, the scope of relief available on "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**III.    DISCUSSION**

    **A. Analysis of *Eitel* Factors**

        ***i.   Possibility of Prejudice to the Plaintiff***

"The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting default judgment." *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15–cv–1108–MCE–KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015) (citation omitted).

Here, Chase would suffer prejudice if the Court declines to enter a default judgment.

Yamassee Tribal Nation and Yamassee Supreme Court have not appeared in this action, and Defendant Khamsanvong's filings were stricken as improper on December 27, 2017. Absent entry of default judgment, Plaintiff would be without recourse for recovery to stop Defendants' assertion of jurisdiction and imposition of $25 million in purported damages. Thus, the first *Eitel* factor favors the entry of a default judgment. *See, e.g., Otter Prods. LLC v Ace Colors Fashion, Inc.*, No. 2:14–cv–00141–ODW(PJWx), 2014 WL 4187947, at *3 (C.D. Cal. Aug. 21, 2014) (stating that a plaintiff suffers prejudice under the first Eitel factor "if there is no recourse for recovery absent default") (citing *Phillip Morris, USA, Inc. v. Catsworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)).

### ii. The Merits of the Substantive Claim and the Sufficiency of the Complaint

"The second and third *Eitel* factors address the merits and sufficiency of [the] claims pled in the complaint." *Lyon v. Bergstrom Law, Ltd.*, No. 116CV00401DADSKO, 2017 WL 2350447, at *3 (E.D. Cal. May 31, 2017) (quoting *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012)) )); *see generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12–cv–1287–AWI–BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries"). To weigh these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

#### 1. Declaratory Judgment

Plaintiff brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for a judicial declaration that Yamassee Tribal Nation and the Yamassee Supreme Court lack personal and subject matter jurisdiction over Chase. Pursuant to the Declaratory Judgment Act, a federal court may "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. A case of actual controversy exists when there is a "substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and the controversy between the parties relate to a claim upon which relief can be granted. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). The case or controversy requirement is satisfied when the plaintiff has "a real and reasonable apprehension that he will be subject to liability." *Societe de Conditionement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981).

Plaintiff alleges Yamassee Tribal Nation and Yamassee Supreme Court purport to be an active Native American Tribal Nation. On December 13, 2016, the Yamassee Supreme Court issued an "Order to Show Cause/Default Judgment/Writ of Restituion [sic] In The Event Defendants Fail To Respond Within 21 Days Of Receipt Of This Order," naming Chase and its Chief Executive Officer as defendants and asserting the potential for an award of damages in favor of Peter Khamsanvong in the amount of $25 million. The purported order to show cause also asserted that Khamsanvong is an enrolled tribal member of the Yamassee Tribal Nation.

Plaintiff has established that there is a real and reasonable apprehension that it will be subject to liability. The purported order to show cause explicitly asserts that Chase is subject to monetary liability. Furthermore, by the order to show cause, Yamassee Tribal Nation and Yamassee Supreme Court purport to exercise adjudicative tribal jurisdiction—which Plaintiff contends is lacking because the Yamassee Tribal Nation is not a recognized "tribe." Thus, the complaint adequately pleads an actual controversy upon which declaratory relief can be granted.

2. Jurisdiction of Indian Tribes

The allegations in the complaint are also sufficient to state a claim that supports the relief sought. As aforementioned, Plaintiff alleges that the Yamassee Supreme Court cannot exercise adjudicative trial jurisdiction because the Yamassee Tribal Nation is not a recognized Indian tribe. The Constitution invests Congress with plenary authority over Indian affairs, including the power to modify or eliminate tribal rights. U.S. Const. art. I, § 8, cl. 3 ("The Congress shall have Power . . . To regulate Commerce . . .with the Indian Tribes."); *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343 (1998). Pursuant to its plenary power rooted in the Indian Commerce Clause, among other sources, "Congress has the power, both directly and by delegation to the

President, to establish the criteria for recognizing a tribe." *Miami Nation v. United States Dep't of Interior*, 255 F.3d 342, 345 (7th Cir.2001); *accord Samish Indian Nation v. U.S.*, 419 F.3d 1355, 1374 (Fed. Cir. 2005) (federal acknowledgment has been committed to the coordinate branches).

In 1994, Congress passed the Federally Recognized Indian Tribe List Act, which requires the Secretary of the Interior to annually "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." Pub. L. No. 103–454, 108 Stat. 4791 (1994) (codified at 25 U.S.C. § 5131). The statute defines the term "tribe" as "any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe." 25 U.S.C. § 5130. A recognized tribe is placed on the Department of the Interior list (the "List"), which is published annually by the Bureau of Indian Affairs in the Federal Registry. *See e.g.*, Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 4235-02 (January 30, 2018) (providing a list of 567 Tribal entities recognized and eligible for funding and services by virtue of their status as Indian Tribes). Generally, inclusion on the List means that the tribe is entitled to the immunities and privileges available to other federally recognized Indian tribes and that the tribe has the responsibilities, powers, limitations, and obligations of other federally recognized Indian tribes. 25 C.F.R. § 83.2.

Federally recognized Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories—subject to plenary control by Congress. *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2030 (2014) (citing *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991) and *United States v. Lara*, 541 U.S. 193, 200 (2004)). "From a tribe's inherent sovereign powers flow lesser powers, including the power to regulate non-Indians on tribal land." *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 808–09 (9th Cir. 2011). A tribe's adjudicative jurisdiction of non-Indians does not exceed its regulatory jurisdiction of non-Indians. *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997). If the tribal court is found to lack adjudicative jurisdiction of a non-Indian, any judgment as to such non-Indian is necessarily null and void. *Plains*

*Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).

Here, a review of the most recent List, 83 Fed. Reg. 4235-02, reveals no Indian tribe by the name of "Yamassee." Furthermore, several courts have found that the Yamassee are "not recognized as a separate sovereign nation" as they "do not have a treaty with the United States, are not recognized by the Bureau of Indians, and are not listed as a recognized Indian tribe in IRS Revenue Procedure 2002-64." *U.S. v. Sanders*, 1:05-CV-2458-JEC, 2007 WL 2493920, at *1 (N.D. GA Aug. 29, 2007); *see also Yamassee Indian Tribe v. Allendale County Government*, 1:13- cv-01577-TLW, 2014 WL 4097926, at *4 (D.S.C. July 18, 2014), *adopted in relevant part*, 2014 WL 4101217 (D.S.C. Aug.15, 2014); *Chaoui v. City of Glendora*, No. CV 13-9422-CJC E, 2015 WL 728506, at *8 (C.D. Cal. Feb. 19, 2015). The Yamassee Tribal Nation, therefore, is not a federally recognized Indian tribe entitled to the immunities and privileges available to other federally recognized Indian tribes, including adjudicative authority pursuant to the exercise of inherent sovereign authority. Thus, the Yamassee Tribal Nation has no adjudicative jurisdiction and any judgment issued by the Yamassee Supreme Court is necessarily null and void.

Thus, the second and third *Eitel* factors weigh in favor of default judgment.

### iii. The Sum of Money at Stake in the Action

Plaintiff does not seek any monetary compensation in this action. Thus, the fourth *Eitel* factor—the sum of money at stake—weighs in favor of default judgment.

### iv. The Possibility of a Dispute Concerning Material Facts

With regard to the fifth *Eitel* factor, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants do not contradict the well-pled allegations. Thus, this factor favors entry of default judgment.

### v. Whether the Default Was Due to Excusable Neglect

There is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect. Defendants were personally served with the summons and complaint. (ECF Nos. 4, 10, 11). On August 2, 2017, and December 27, 2017, the Clerk entered default against Defendants. (ECF No. 6, 23, 24). On September 8, 2017, and September 22, 2017, Defendant

Khamsanvong filed several documents in this action, (ECF Nos. 9, 12), which were stricken pursuant to Fed. R. Civ. P. 11(a), Local Rule 131(b), and Local Rule 183(a). (ECF No. 22). Defendants have not otherwise appeared in this action, and have not requested that default be set aside. Defendants are aware of the instant action, but have failed to prosecute it in accordance with the rules of this Court. Thus, this factor weighs in favor of granting default judgment.

### *vi. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed when compared with the other applicable factors, which weigh in favor of granting default judgment.

Accordingly, the *Eitel* factors weigh in favor of entering a default judgment.

## B. Determination of the Terms of Judgment

### *i. Declaratory Relief*

Whether declaratory relief is warranted under the Declaratory Judgment Act is determined by a two-step process. First, the court must determine whether there is an actual controversy within its jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005); *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). As discussed above, the Court finds that there is an actual controversy in this matter. Second, the Court must decide whether to exercise its jurisdiction over this matter, as guided by the following factors that derive from *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942), the district court should: (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation." *Principle Life Ins.*, 394 F.3d at 672 (citations omitted). "Essentially, the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Id.* (citing *Kearns*, 15 F.3d at 144).

Here, there is no state law issue to determine. Whether a tribal court has or has exceeded the limits of its jurisdictions is a federal question arising under federal law. *Strate*, 520 U.S. at 448. Additionally, there is no apparent risk of forum shopping or duplicative litigation. Thus, the Court finds that the request for declaratory relief, as articulated in the complaint, is reasonable in

this case.

### ii. Permanent Injunction

Plaintiff fails to demonstrate that it is entitled to a permanent injunction. An injunction is an "extraordinary remedy" that is not meant "to restrain an act the injurious consequences of which are merely trifling." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982) (citation omitted). In order to obtain a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

First, Plaintiff has failed to show that it will suffer irreparable injury if a permanent injunction is not issued. The equitable remedy of an injunction—whether preliminary or permanent—is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "Speculative" future injuries, unaccompanied by a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way" are insufficient to establish an irreparable injury. *Id.* In the instant action, there is no showing of any real or immediate threat that Plaintiff will be wronged again. In fact, Defendants have not continued in their attempted to assert jurisdiction over Plaintiff. On January 13, 2017, Plaintiff responded to the purported order to show cause dated December 13, 2016, [2] objecting to the Yamassee Supreme Court's purported jurisdiction. Plaintiff received no response to the objection, and Defendants have not otherwise attempted to assert its purported adjudicative jurisdiction. *See id.* at 111 (holding that injunctive relief was not warranted when the only harm plaintiff alleged was a singular incident that had occurred five monthly previously, and there was insufficient indication that the harmful conduct would occur again). Thus, there is insufficient

---

[2] In a footnote in its motion for default judgment, Plaintiff contends that its records reveal that it was sent two purported orders to show cause: one dated January 28, 2016, and another dated December 13, 2016. The documents were, however, nearly identical.

11

showing to establish any irreparable injury.

Second, declaratory relief is an adequate remedy at law. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) ("Since in the federal courts equity has always acted only when legal remedies were inadequate the expansion of adequate legal remedies provided by the Declaratory Judgment Act and the Federal Rules necessarily affects the scope of equity.") (footnote omitted). The declaratory relief in this action has virtually the same practical impact as an injunction. Plaintiff seeks an injunction, "prohibiting [Defendants] and enjoining them from any further effort to exercise jurisdiction over Plaintiff or its officers, including Jamie Dimon, and from issuing any orders, awards or judgments to or against Plaintiff or its officers, including Jamie Dimon, in connection with the claims made by Khamsanvong." The issuance of a declaration that the Yamassee Tribal Nation has no adjudicative authority would in effect inhibit the Yamassee Supreme Court and the Yamassee Tribal Nation from any further effort to exercise jurisdiction over Plaintiff. Thus, Plaintiff has an adequate available legal remedy in the form of declaratory relief.

Finally, while the public interest would not be disserved by a permanent injunction, when considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is not warranted. Armed with a declaratory judgment, Plaintiff can regard as null and void any attempt by the Yamassee Supreme Court and the Yamassee Tribal Nation to exercise purported adjudicative jurisdiction.

Accordingly, Plaintiff has failed to demonstrate that it is entitled to a permanent injunction.

**IV.  CONCLUSIONS AND RECOMMENDATIONS**

For the foregoing reasons, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment, (ECF No. 26), be GRANTED in part and DENIED in part;
2. Plaintiff's request for declaratory relief be granted, and a judicial declaration be issued as follows:
    a.  The Yamassee Tribal Nation and Supreme Court of the Yamassee Native

American Association of Nations have no authority to award damages or any legal or equitable relief against JPMorgan Chase Bank, N.A., and/or and its officers, executives, employees and agents, including Plaintiff's Chief Executive Officer Jamie Dimon, for any claim arising out of the property known as 1906 West Aurora Avenue, Porterville, California 93257 or the 2013 loan and deed of trust recorded as instrument number 2013-0051517 in Tulare County Official Records; and

    b. Any purported orders, awards, or judgments that have been issued by the Yamassee Tribal Nation and/or the Supreme Court of the Yamassee Native American Association of Nations, involving JPMorgan Chase Bank, N.A., and/or its officers, executives, employees and agents, including Plaintiff's Chief Executive Officer Jamie Dimon, related to Peter Khamsanvong, the Property and/or the Loan, are null and void and unenforceable as a matter of law;

3. Plaintiff's request for a permanent injunction be denied; and

4. The Clerk of the Court be DIRECTED to CLOSE this case.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 27, 2018**      /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

13